UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER ANDREW CANALES,

    Petitioner,

                                                      Case No. 22-cv-11811

v.                                                     HON. MARK A. GOLDSMITH

BRIAN LESATZ,

    Respondent,
_____/

**OPINION & ORDER
(1) AMENDING CAPTION, (2) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, (3) DENYING THE MOTION FOR AN EVIDENTIARY HEARING (Dkt. 1), (4) DENYING THE MOTION TO APPOINT COUNSEL (Dkt. 12), (5) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (6) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Christopher Andrew Canales, who is incarcerated at the Baraga Maximum Correctional Facility in Baraga, Michigan, filed a pro se application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for torture, Mich. Comp. L. § 750.85; unarmed robbery, Mich. Comp. L. § 750.530; unlawful imprisonment, Mich. Comp. L. § 750.349b; assault with intent to do great bodily harm, Mich. Comp. L. § 750.84; felonious assault, Mich. Comp. L. § 750.82, assault and battery, Mich. Comp. L. § 750.81, and being a fourth habitual offender, Mich. Comp. L. § 769.12.

The Court orders the Clerk of the Court to amend the caption of the case to reflect the correct spelling of Petitioner's name, Christopher Andrew Canales.[1]

---

[1] The Court obtained the correct spelling of Petitioner's last name from his own pleadings, the Michigan Court of Appeals' opinion, and the Michigan Department of Corrections' Offender Tracking Information System (OTIS).

For the reasons that follow, the Court denies the petition for writ of habeas corpus.

## I. BACKGROUND

Petitioner was convicted after a jury trial in Michigan's Wayne County Circuit Court. This Court recites verbatim the relevant facts that the Michigan Court of Appeals relied on, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises from the physical assault incident of the victim. Around midnight, on the day of the incident, the victim was walking home from his friends' apartment building when he ran into defendant and codefendant, Clarence Campbell. Defendant and Campbell asked the victim for the money he owed them, which the victim knew was the $20 the victim owed to "somebody else ... over a phone." After insisting he had no money, the victim was dragged by his hooded sweatshirt by defendant and Campbell into an apartment building. The victim was dragged into apartment unit one, which he recognized as the place where he had purchased crack cocaine and heroin in the past. Inside the apartment, the victim saw between five and seven people, recognizing some of the people but only identifying the apartment's tenant, Dawn Gilson, and a man she lived with. In the living room of the apartment, defendant and Campbell punched the victim and searched him for money, pulling off his clothes. At one point, Campbell found the victim's debit card and called the victim's bank to determine the balance of the account. The victim testified that defendant and Campbell refused to let him call someone to obtain the money he owed them. Defendant obtained a stick and started hitting the victim with it until it broke into two pieces, then defendant and Campbell each started hitting the victim with the pieces of stick. The victim was then dragged into the bathroom and told to sit on the toilet while defendant and Campbell cut the victim's hair with scissors and electric clippers. While attempting to cover his face with his hands and close his eyes, the victim felt hair spray being sprayed in his face. The victim heard someone say "it's flammable[,] ... [a]nd the next thing you know I hear a lighter go off and ... a burning feeling on my face. I open up my eyes real[ly] quick and [my face is] just burning and it's on fire." The victim got in the bathtub and attempted to put out the fire using the shower curtain. After the fire was extinguished, defendant turned on the hot water to the shower. The victim attempted to lower the water temperature but defendant told him not to touch the faucet handle. Defendant eventually turned off the water, turned off the bathroom light, and left the victim in the bathroom alone. The victim heard a knock at the door to the apartment and defendant told the victim "to keep quiet or he was gonna kill me."
>
> Outside the apartment, the responding Detroit Police Officers, Mitchell Griggs and Brent Miller, heard "a fuss on the inside [of the apartment] like people moving

around, closing doors, that kind of thing." The door to the apartment was opened by a female occupant, the officers asked if anybody was injured inside the apartment. After the female responded, Officer Griggs heard someone yell "[h]elp really loudly." The officers entered the apartment, finding the victim in the bathroom, stating that he needed help and "they" would not let him leave. After speaking to the victim, the officers arrested defendant and Campbell for suspected aggravated assault, felonious assault, and possible kidnapping. The victim was transported to the hospital and remained hospitalized for his burns for three days.

Before trial, defendant was offered a plea agreement, allowing defendant to have pleaded to the torture charge with a sentence of 12 to 20 years' imprisonment, with the dismissal of the remaining counts and fourth-offense habitual offender status. Defendant reviewed the victim's medical records and photographs of the victim's injuries that had been disclosed by the prosecutor, deciding to reject the plea offer. At trial, the victim testified that he did not have a weapon on his person, including a piece of brick, but that he had a lighter at some point during the incident; he did not argue with Gilson inside the apartment; and he was not under the influence of drugs at the time of the incident, but he had used drugs the morning of the incident. After defendant cross-examined the victim, the prosecutor sought to admit six photographs of the victim's injuries taken at the hospital on the day of the incident. Defendant's trial counsel objected to the admission, arguing "these photos have been in existence since the day they were taken on March 7th. There's a discovery order ... requiring a prompt turnover, uh, a mutual discovery of all these items[,] [and] I'm just getting these yesterday." As a result, trial counsel argued it was "too late" and "prejudiced" defendant to admit the photographs now and without proper and timely disclosure. The trial court allowed the photographs to be admitted, stating:

Trial Counsel: . . . We need to have these in a timely fashion because it goes into all of the things that develop with a, a defendant's rep—representation including the possibility of whether an appropriate plea is appropriate—

Trial Court: Counsel—

Trial Counsel: —for defendant.

Trial Court: —we're way past that.

Trial Counsel: I know we're way past that. We have to, we have to have them. We have to have—

Trial Court: Why?

Trial Counsel: —them early on.

* * *

3

Trial Counsel: The photographs are gonna be an indication [of] this man's injuries.

Trial Court: I know that.

Trial Counsel: Yes.

Trial Court: So what will they tell you about this trial. She wants to introduce them now.

Trial Counsel: Yeah. I'm saying it's too late.

Trial Court: Overruled. You can bring the jury in.

When the prosecutor resumed with redirect examination of the victim and introduction of the photographs, trial counsel objected and requested a voir dire examination. The victim testified that he had not seen the photographs before that day, prompting trial counsel's restated objection because the victim had not seen the photographs before; however, the trial court overruled the objection and admitted the photographs. When redirect examination resumed, the victim testified that the photographs showed the burn marks on his face, sections of his hair that had been cut, blood on his head, and injuries from the stick.

Defendant elected to testify at trial, giving a different description of the incident. Before the incident, defendant stated he was at a nearby bar, when his daughter's grandmother, Karen Puente, called him, asking to borrow some money. Defendant met Puente to give her money and then went to Gilson's apartment to spend the night because he forgot his keys to his own house. About ten minutes later, defendant was sitting in the living room with about six other people when the victim, whom defendant recognized as "Robin" and a person that he had sold drugs to a couple times, arrived at the apartment with a female named Alexis. Defendant suspected the victim was "high on drugs because he was tweaking . . . like jittery [and] . . . blabbering. He couldn't stand still." Defendant observed the victim and Gilson get into an argument and then the victim "reached in his pocket and pulled out, uh, a half a brick and like kind of like threatened [Gilson] with it." Because defendant thought the victim was going to throw or hit Gilson with the brick, defendant slammed the victim to the floor, punched him twice, and attempted to grab the brick from him. Defendant stated that Campbell took the brick from the victim and defendant "held the victim's arms down for a minute and told him to go clean up." At that point, the victim "willingly went to the bathroom." Defendant heard the shower turn on, so he went to the bedroom to sleep. Defendant stated he was awoken by a police officer, telling him to come into the living room. Defendant denied approaching the victim on the street, demanding money from the victim, hitting the victim with a stick, removing the victim's clothing, cutting the victim's hair, and burning the victim's face.

During defendant's cross-examination, a portion of defendant's interrogation with police was played for the jury. In the interrogation, defendant stated that the victim owed money for a television and drugs but that he only physically restrained the victim and Campbell hit the victim with the stick. Defendant later admitted during the interrogation that he lied about being asleep at the time of the incident. At the end of the trial, the jury found defendant guilty of torture, unarmed robbery, unlawful imprisonment, AWIGBH [assault with intent to do great bodily harm], felonious assault, and assault and battery. Defendant was sentenced as delineated above.

After sentencing, defendant filed a timely claim of appeal from the trial court's judgment of sentence. With his appellate brief, defendant moved to remand to develop a claim of ineffective assistance of trial counsel, arguing trial counsel was ineffective for failing to obtain the photographs of the victim's injuries before the deadline for defendant to accept a plea offer and failing to call Puente as a witness. Defendant also argued he was prejudiced by the prosecution's withholding of the photographs of the victim's injuries. This Court granted defendant's motion to remand "to allow defendant to file a motion for the relief he deems appropriate and have an evidentiary hearing and decision whether defendant was denied effective assistance of counsel." People v Canales, unpublished order of the Court of Appeals, entered June 18, 2020 (Docket No. 350536).

On remand to the trial court, defendant argued he was (a) denied due process when the prosecutor withheld the photographs of the victim's injuries until the plea offer expired, (b) prejudiced by the prosecutor's violation of the discovery order and the trial court's failure to enforce the order, and (c) denied effective assistance of counsel for trial counsel's failure to obtain the photographs before trial and not calling Puente as a witness. Because of the COVID-19 pandemic, the trial court conducted the People v Ginther, 390 Mich 436; 212 NW2d 922 (1973), hearing by Zoom technology, as authorized by the Michigan Supreme Court, without objection by any of the parties. Defendant's trial counsel, John Holler, testified that on the first day of trial he received two photographs of the victim's burn marks on his face allegedly from the incident. As a result, trial counsel stated that he objected to the photographs:

These were especially egregious to me, they were in violation, clear violation of the Court's order of discovery. They were [a] surprise to the defendant and me, and I also made it clear, I thought, on the record that I needed to have these—this photograph and another to deal with my client and consult with my client in evaluating the plea offer.

\* \* \*

Without question it just sabotaged my ability to properly and effectively represent [defendant] and consulting with him.

5

However, trial counsel testified that timely disclosure of the photographs would not have made a difference in his trial strategy. As to calling Puente as a witness, trial counsel testified:

[S]he didn't go inside the apartment building[,] she just went on her way. So[,] she was never a witness to any of the—to whatever happened inside the apartment building that [the victim] says is an assault against his person that resulted in these burns . . . I reached out and tried to contact her through another person and didn't get much response and then finally I told my—it appeared to me that even if you take everything that [defendant] is telling me was true then she would apply no value at all to his defense.

The trial court denied defendant's motion for a new trial, stating "there was no error on the part of [trial counsel] in his representation of [defendant]." The trial court concluded that trial counsel's performance did not fall below the objective standard of reasonableness because (1) trial counsel appropriately determined that Puente provided no value to the defense because she was not a witness to the incident; (2) trial counsel's inability to effectively negotiate a plea deal because of the late disclosure did not affect his trial strategy; and (3) trial counsel made a timely objection to the admission of the photographs. A written order memorializing the trial court's ruling was entered the same day.

People v. Canales, No. 350536, 2021 WL 3117217, at * 1–*4 (Mich. Ct. App. July 22, 2021), lv. den. 974 N.W.2d 205 (Mich. 2022)(internal footnotes omitted).

This petition for habeas corpus followed. Petitioner seeks habeas relief on the following grounds: (i) the prosecutor violated the trial court's discovery order by failing to turn over photographs of the victim prior to trial, (ii) trial counsel was ineffective, and (iii) the trial court's findings of fact on remand were erroneous.

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

6

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405–406 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410–411. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

### III. DISCUSSION

#### A. Habeas Petition

The Court discusses each of Petitioner's claims for relief in turn.

**1. Claims One and Two: The Discovery Claims**

7

In his first and second claims, Petitioner alleges that the prosecutor violated the trial court's discovery order by failing to turn over two photographs of the victim, which showed the victim's injuries, until trial. Petitioner argues that without having these photographs during the pre-trial period, he was unable to correctly assess the strength of the prosecutor's case, causing him to reject the prosecutor's plea offer. Petitioner also argues that the late admission of these photographs prevented him from having a fair trial.

It is well-settled that there is no general constitutional right to discovery in a criminal case. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977) (denying due process claim of a defendant who was convicted with aid of surprise testimony from an accomplice who was an undercover agent); United States v. Presser, 844 F. 2d 1275, 1281 (6th Cir.1988) (citing Weatherford, 429 U.S. at 559). A claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review because it is not a constitutional violation. See Lorraine v. Coyle, 291 F. 3d 416, 441 (6th Cir. 2002). Petitioner is not entitled to habeas relief simply because the prosecutor violated Michigan Court Rule 6.201 or some other Michigan rules regarding discovery.

It is true that the prosecution's suppression of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. Brady v. Maryland, 373 U.S. 83, 87 (1963). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 683 (1985). There are three components of a true Brady violation: (i) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (ii) the evidence must have been suppressed by the state, either

willfully or inadvertently; and (iii) prejudice must have ensued. Strickler v. Greene, 527 U.S. 263, 281–282 (1999). "Prejudice (or materiality) in the Brady context is a difficult test to meet." Jamison v. Collins, 291 F. 3d 380, 388 (6th Cir. 2002).

Petitioner failed to offer any evidence or argument to show that these photographs of the victim contained exculpatory material. Indeed, Petitioner claims that the victim's injuries that were depicted in the undisclosed photographs were so severe that had he viewed these photographs prior to trial, he would have chosen to accept the prosecutor's plea offer. The burden is on a habeas petitioner to prove that evidence that is required to be disclosed to him under Brady was not disclosed to him. Coe v. Bell, 161 F. 3d 320, 344 (6th Cir. 1998). Allegations that are merely conclusory or purely speculative cannot support a Brady claim. Burns v. Lafler, 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004). "[M]ere speculation that a government file may contain Brady material is not sufficient" to prove a due-process violation. United States v. Driscoll, 970 F. 2d 1472, 1482 (6th Cir. 1992), abrogated on other grounds by Hampton v. United States, 191 F.3d 695 (6th Cir. 1999). Petitioner has failed to show that any of these photographs exculpated him of this crime. Petitioner is therefore not entitled to habeas relief on any Brady claim. See Burns, 328 F. Supp. 2d at 724.

Moreover, the mere fact that the untimely disclosure of the two photographs of the victim's injuries may have prevented Petitioner from deciding to plead guilty does not entitle him to habeas relief. In Weatherford, the United States Supreme Court rejected the very argument made by Petitioner. 429 U.S. at 559. In that case, defendant alleged that the prosecution had "lulled [him] into a false sense of security and denied him the opportunity . . . to consider whether plea bargaining might be the best course." Id. (punctuation modified). The defendant in Weatherford, like Petitioner, argued he would have taken the prosecution's plea bargain offer if he had been

9

aware of all of the prosecution's inculpatory evidence. Id. at 560–561. The Supreme Court rejected this argument because "there is no constitutional right to plea bargain," and it explained that "[i]t is a novel argument that constitutional rights are infringed by trying the defendant rather than accepting his plea of guilty." Id. at 561. Thus, the prosecutor's failure to disclose inculpatory evidence to a habeas petitioner is not a constitutional error that provides a basis for granting habeas relief even if it causes the petitioner to reject a plea bargain offer. See Wooten v. Thaler, 598 F.3d 215, 219–222 (5th Cir. 2010) (finding that habeas petitioner was not deprived of fair notice of issues in the case, in violation of his due process rights in capital murder prosecution under Texas law, by state's unintended delay in producing the full weight of its DNA evidence, where the state produced DNA evidence that strengthened its case after the petitioner had—on basis of the incomplete, and thus misleading, information in his possession—rejected an offer of a plea bargain that eliminated the possibility of the death sentence; state had no constitutional duty to disclose incriminating evidence, and defense counsel were aware that state had significant physical evidence).

In any event, the Michigan Court of Appeals rejected Petitioner's claim:

As stated, there is no record that the prosecutor deliberately failed to comply with the discovery order. As to actual prejudice to defendant, a review of the record indicates that defendant was aware of the extent of the victim's injuries before the trial began, including the burn marks. Specifically, defendant received the victim's medical records and reviewed all but two photographs showing the victim's injuries, indicating scratches, bruises, missing hair, and the body camera footage from the night of the incident. With this information, defendant rejected the plea offer and maintained the defense that the victim caused his own injuries by using a "crack lighter." In fact, trial counsel indicated the photographs would not "have made a difference in the strategy of trial[.]" Accordingly, the trial court's finding that defendant did not establish actual prejudice from the prosecutor's late disclosure is supported by the record.

Canales, 2021 WL 3117217, at * 6.

10

The Michigan Court of Appeals' decision was reasonable, precluding habeas relief. Petitioner had been provided with the bulk of the prosecutor's evidence prior to trial, including significant evidence detailing the extent and severity of the victim's injuries. The prosecutor's failure to disclose the two additional photographs prior to trial did not prejudice Petitioner or impede his ability to make an informed decision whether to accept or reject the plea offer. See, e.g., United States v. Clark, 385 F.3d 609, 620 (6th Cir. 2004) (finding that failure to disclose agent's rough interview notes that reflected that defendant had orally corroborated his presence at locations of drug sales, a fact not reflected in agent's formal report, was harmless error, where notes were produced during trial, statement was inculpatory, independent evidence of defendant's presence at scene was overwhelming, and defendant had sufficient evidence before trial to make informed decision as to whether to enter guilty plea); Wooten, 598 F. 3d at 221 (determining that state's failure to disclose DNA evidence did not deprive petitioner of his ability to decide whether to plead guilty when defense counsel already had been provided significant evidence of the petitioner's guilt).

To the extent that Petitioner claims that his right to fair trial was violated, any Brady claim would fail because the photographs were disclosed to Petitioner at trial. Brady generally does not apply to the delayed disclosure of exculpatory information, but only to a complete failure by the prosecutor to disclose such information. See United States v. Davis, 306 F. 3d 398, 421 (6th Cir. 2002). If previously undisclosed evidence is disclosed during trial, no Brady violation occurs unless the defendant is prejudiced by its nondisclosure. United States v. Word, 806 F. 2d 658, 665 (6th Cir. 1986); see also United States v. Bencs, 28 F. 3d 555, 560–561 (6th Cir. 1994). The United States Court of Appeals for the Sixth Circuit has noted that "the Supreme Court rejected the claim that the duty to disclose hinges on the usefulness of the material to pretrial preparation. Such a

11

standard would 'necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense.'" Bencs, 28 F. 3d at 560 n. 5 (quoting United States v. Agurs, 427 U.S. 97, 112, n. 20 (1976)). Any claim that the late disclosure of these discovery materials may have precluded defense counsel from adequate trial preparation is non-cognizable pursuant to Agurs. See Burns v. Lafler, 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004) (citing Bencs, 28 F. 3d at 561).

Petitioner is not entitled to relief on his first and second claims.

**2. Claim Three: The Ineffective Assistance of Counsel Claims**

Petitioner next claims he was denied the effective assistance of trial counsel.

To establish ineffective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-part test. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. Id. at 689. In other words, a defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. Id. Second, the defendant must show that such performance prejudiced his defense. Id. at 687. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

**a. Not Obtaining All of Discovery Before Trial**

Petitioner first claims that trial counsel was ineffective for failing to ensure that he obtained all of the discovery prior to trial. Petitioner, as with his independent discovery claim, alleges that

he was prejudiced by counsel's failure to obtain all of the photographs of the victim prior to trial, claiming that he would have accepted the prosecutor's plea offer had he been allowed to see the undisclosed photographs of the victim's injuries.

The Sixth Amendment right to counsel extends to the plea-bargaining process. Lafler v. Cooper, 566 U.S. 156, 163 (2012); Missouri v. Frye, 566 U.S. 134, 143–144 (2012). Thus, a criminal defendant is "entitled to the effective assistance of competent counsel" during plea negotiations. Lafler, 566 U.S. at 162 (punctuation modified). To establish that he or she was prejudiced by counsel's alleged deficiency, a defendant who has rejected a plea offer must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court, i.e., that the defendant would have accepted the plea, and the prosecution would not have withdrawn it in light of intervening circumstances. Id. at 164. The defendant must also show that the court would have accepted its terms, and that the conviction or sentence, or both, would have been less severe than under the judgment and sentence that in fact were imposed. Id.

"A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." Smith v. United States, 348 F.3d 545, 553 (6th Cir. 2003). However, an attorney's failure to insist that his or her client accept a plea offer even if there is overwhelming evidence of guilt does not amount to constitutionally ineffective assistance. Id. at 552.

In the present case, Petitioner's counsel had already obtained and reviewed the bulk of the evidence with Petitioner before the prosecution made the plea offer. As the Michigan Court of

Appeals noted in its opinion, there was no indication that defense counsel had any reason to believe that the prosecution had failed to provide him with the additional photographs, and once he did learn about these additional photographs, he objected to the prosecutor's failure to timely provide them to the defense. Canales, 2021 WL 3117217, at * 7. Moreover, Petitioner is unable to show that counsel's failure to obtain these additional photographs prior to trial adversely affected Petitioner's decision to reject the plea bargain when Petitioner was already aware of the extent of the victim's injuries through a wealth of other information. The Sixth Circuit has observed that "it is well settled that the test for prejudice under Brady and Strickland is the same." Montgomery v. Bobby, 654 F. 3d 668, 680 n. 4 (6th Cir. 2011) (punctuation modified); see also Hutchison v. Bell, 303 F. 3d 720, 749 (6th Cir. 2002). The Court already determined that the prosecutor's failure to provide the two additional photographs of the victim to Petitioner prior to trial, in violation of the discovery order, did not prejudice Petitioner. For the same reasons, the Court concludes that Petitioner was not prejudiced by counsel's failure to obtain and review these additional photographs of the victim when discussing the plea offer with Petitioner.

Petitioner's claim fails for a second reason. To establish that he or she was prejudiced by counsel's alleged deficiency, a defendant who has rejected a plea offer must show that but for the ineffective advice of counsel there is a reasonable probability that he or she would have accepted the plea. Lafler, 566 U.S. at 164. In addition, a court, in determining the remedy for ineffective assistance of counsel relating to a defendant's rejection of a plea offer, may take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her action. Id. at 171. The Supreme Court has indicated that "[a]lthough a defendant's proclamation of innocence does not relieve counsel of [his or her] normal responsibilities under Strickland, it may affect the advice counsel gives" with respect to the plea bargaining process. Burt v. Titlow,

14

571 U.S. 12, 22 (2013). Because there is no indication that Petitioner would have been willing to make out a factual basis of guilt, Petitioner failed to show that the plea would have been accepted and thus failed to show that he was prejudiced by counsel's alleged deficiencies with respect to the alleged plea offer, so as to establish that he was denied the effective assistance of counsel. See, e.g., Jackson v. United States, 101 F. App'x 583, 586 (6th Cir. 2004). Petitioner's assertion of his innocence at trial demonstrates that he would not have pled guilty and was thus not prejudiced by trial counsel's alleged ineffectiveness. Humphress v. United States, 398 F.3d 855, 859 (6th Cir. 2005).

### b. Not Calling Witness

Petitioner also claims that trial counsel was ineffective for failing to call Karen Puente as a witness.

Petitioner is not entitled to relief on his claim because he failed to provide to the Michigan courts or to this Court an affidavit from Puente concerning her proposed testimony and willingness to testify on Petitioner's behalf. Nor did he call Puente to testify at the Ginther hearing. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. See Workman v. Bell, 178 F.3d 759, 771 (6th Cir. 1998). Petitioner offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether Puente would have been able to testify and what the content of her testimony would have been. In the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to call Puente to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. See Clark v. Waller, 490 F. 3d 551, 557 (6th Cir. 2007).

The only evidence concerning Puente came from Petitioner's own attorney at the Ginther hearing, who testified that he did not call Puente as a witness because she did not go with Petitioner into the apartment building where the assault took place and did not witness any of the events.

Defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. See Millender v. Adams, 376 F. 3d 520, 527 (6th Cir. 2004). A defendant is not denied the effective assistance of counsel by an attorney's failure to present the testimony of a witness who was not present at the scene of a crime. See Morgan v. Bunnell, 24 F. 3d 49, 53 (9th Cir. 1994). Because Puente was not present in the apartment when the confrontation took place between Petitioner and the victim, she could not have exonerated Petitioner of the crime, and, therefore, counsel was not ineffective in failing to call her as a witness. See, e.g., Pillette v. Berghuis, 408 F. App'x. 873, 885–886 (6th Cir. 2010). Petitioner is not entitled to relief on his third claim.

### 3. Claim Four: The State Courts' Fact-Finding Claim

Petitioner finally alleges that the trial court made a mistake of fact on remand from the Michigan Court of Appeals, which then led the state appellate court to erroneously reject his appeal. Petitioner first argues that the trial judge on remand addressed only whether trial counsel was ineffective and never ruled on the issue of whether he was prejudiced by the prosecution's alleged violation of the pretrial discovery order. Second, he argues that the Michigan Court of Appeals erroneously stated that trial counsel had the two undisclosed photographs prior to trial.

The Michigan Court of Appeals rejected Petitioner's first subclaim on two grounds. First, the Michigan Court of Appeals noted that its order to remand was for the stated purpose to conduct a hearing on whether Petitioner was denied the effective assistance of counsel and that, under Michigan law, proceedings on remand from an appellate court are limited to the scope of the

remand order. Canales, 2021 WL 3117217, at * 8. Nonetheless, Petitioner did bring up the discovery issue at the Ginther hearing, and the trial judge ruled that Petitioner had not been prejudiced by the prosecutor's failure to provide the two photographs prior to trial. Id. The Michigan Court of Appeals concluded: "On this basis, we conclude that the trial court addressed the prosecutor's disclosure of the photographs on remand, even if briefly, finding that the disclosure did not affect defendant's due-process rights." Id.

Petitioner's claim that the Michigan Court of Appeals incorrectly stated he had the two photographs prior to trial is without merit. Throughout its decision, the Michigan Court of Appeals noted that Petitioner had other photographs, other than the two at issue, prior to trial. The Michigan Court of Appeals did not find that Petitioner had those two photographs before trial. Petitioner did not show that the Michigan Court of Appeals' factual determination was unreasonable. He is not entitled to relief on his claim.

### B. Motion for an Evidentiary Hearing and Motion for the Appointment of Counsel

Petitioner filed a motion for an evidentiary hearing (Dkt. 1) and a motion for the appointment of counsel (Dkt. 12).

A habeas petitioner is not entitled to an evidentiary hearing on his or her claims if the claims lack merit. See Stanford v. Parker, 266 F. 3d 442, 459–460 (6th Cir. 2001). Because Petitioner's claims lack merit, he is not entitled to an evidentiary hearing.

There is no constitutional right to counsel in habeas proceedings. Cobas v. Burgess, 306 F. 3d 441, 444 (6th Cir. 2002). Because Petitioner's claims lack merit, the Court denies his request for the appointment of counsel. See Lemeshko v. Wrona, 325 F. Supp. 2d 778, 788 (E.D. Mich. 2004).

### C. Certificate of Appealability

Before Petitioner may appeal this Court's decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484-485 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336-337.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right with respect to any of his claims. Accordingly, a certificate of appealability is not warranted in this case.

### D. Leave to Proceed In Forma Pauperis on Appeal

While a certificate of appealability may be granted only if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant an application for leave to proceed in forma pauperis on appeal if it finds that an appeal can be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(2). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster v. Ludwick, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002). Although jurists of reason would not debate the Court's resolution of Petitioner's claims, the issues are not frivolous. Therefore, an appeal could be taken in good faith, and Petitioner may proceed in forma pauperis on appeal. Id.

## IV. CONCLUSION

For the reasons stated above, the Court denies the petition for writ of habeas corpus, denies the motions for an evidentiary hearing and for the appointment of counsel, declines to issue a certificate of appealability, and grants Petitioner leave to proceed in forma pauperis on appeal.

SO ORDERED.

Dated: April 13, 2023  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge